**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

UTILITY SUPPLY COMPANY, an )
Oklahoma Corporation, )
)
      **Plaintiff,** )
)   **Case No. 10-CV-124-JHP**
v. )
)
AVB BANK, an Oklahoma Corporation; )
formerly Arkansas Valley State Bank, )
an Oklahoma Corporation, )
)
      **Defendant.** )

## OPINION AND ORDER

Before the Court is Plaintiff Utility Supply Company's Motion to Remand and Brief in Support [Docket No. 11], Defendant AVB Bank's Response in Opposition to Plaintiff's Motion to Remand [Docket No. 15], Reply of Utility Supply Company in Support of Its Motion to Remand and Request for Attorney Fees [Docket No. 16], Defendant's Sur-Reply in Opposition to Plaintiff's Motion to Remand [Docket No. 22], and AVB Bank's Supplemental Brief in Opposition to Plaintiff's Motion to Remand [Docket No. 28]. For the reasons stated herein, Plaintiff's Motion to Remand is hereby **DENIED**.

## BACKGROUND

Plaintiff Utility Supply Company ("USC") was a customer of Defendant AVB Bank ("AVB") starting in June, 2007. USC maintained checking accounts and a line of credit with AVB for the operation of USC's business. Included in the services provided by AVB to USC were online banking features which allowed USC to access its accounts through the internet.

On two occasions in June, 2009, unknown persons accessed USC's account via AVB's online banking apparatus using remote computer facilities with IP addresses different from those

attributable to USC's computers.  On June 18, 2009, the unknown persons initiated four wire transfers of funds from USC's operating account at AVB, transferring a total of $28,300 to four out-of-state accounts.  The transfers initiated on June 18, 2009 were accomplished through use of the Fedwire Funds Service.[1]  *See* Defendant's Response in Opposition to Plaintiff's Motion to Remand, Exhibit A, Docket No. 15.  On June 22, 2009, the unknown persons again initiated funds transfers totaling $29,900 from USC's payroll account with AVB.  The June 22 transfers were accomplished through automated clearing house ("ACH") services,[2] and resulted in the funds being transferred to unknown destinations.  *See* Defendant's Response in Opposition to Plaintiff's Motion to Remand at 3, Docket No. 15.  USC claims that it never authorized these funds transfers.

On February 17, 2010, USC filed this action against AVB in Oklahoma state court in the District of Tulsa County.  USC alleged the following causes of action against AVB: (1) negligence, (2) breach of statutory duty under **Okla. Stat**. tit. 12A § 4A-202,[3] and (3) breach of contract.  Notice of Removal, Exhibit A (Petition at 7-10),  Docket No. 2.  On March 1, 2010, AVB filed a notice of removal with this court, and contends that removal of this action is proper because a portion of USC's claims are preempted by federal statutes and regulations.[4]   AVB argues that because a

---

[1]"Fedwire is a funds-transfer system owned and operated by the Federal Reserve Banks that is used primarily for the transmission and settlement of payment orders governed by [12 C.F.R. § 210.25 et seq.]."  12 C.F.R. § 210.26(e).

[2]ACH transfers are not included in the Fedwire system and therefore are not regulated by the Code of Federal Regulations.  *See* 12 C.F.R. §210.26(e).

[3]USC did not initially cite this statute in its Petition.  USC provided this citation for its breach of statutory duty claim in its briefings and oral argument.  *See* Reply of Utility Supply Company in Support of Its Motion to Remand and Request for Attorney Fees at 2, Docket No. 16; Transcript of Sept. 29, 2010 Motion Hearing at 4.

[4]Specifically, the Federal Reserve Act, 12 U.S.C. § 221 et seq, Federal Reserve Regulation J, Subpt. B, 12 C.F.R. § 210.25 et seq., and the Federal Reserve Banks Operating Circular No. 6.

portion of the disputed funds transfers were completed via the Fedwire funds service, Regulation J–the federal regulation that governs funds transfers through Fedwire–governs those claims.

USC has now filed a motion to remand this case to state court, contending that they have not stated a federal claim.  USC contends that their claims pertain only to the breach of security itself, and that any Fedwire transfer completed subsequent to the breach of AVB's security measures is merely incidental to their claim.  USC does not contest AVB's notice of removal as untimely or the removal procedure itself.

## DISCUSSION

### A.      Legal Standard on Motions to Remand

Under the removal statute, a defendant may remove a case to the district courts of the United States only if such courts have original jurisdiction over the case.  28 U.S.C. § 1441(a).  In the instant case the parties to this suit are not diverse in their citizenship, therefore federal courts have original jurisdiction only if the suit raises a federal question.  Federal question jurisdiction occurs when the suit is an action "arising under the Constitution, laws, or treaties of the United States." Id. § 1331.

> For a case to arise under federal law, the federal question must be apparent on the face of a well-pleaded complaint, and Plaintiff's cause of action must be created by federal law or, if it is a state-law cause of action, its resolution must necessarily turn on a substantial question of federal law, and that federal law in turn must create a private cause of action.

Rice v. Office of Servicemembers Grp. Life Ins., 260 F.3d 1240, 1245 (10th Cir. 2001) (citing Merrell Dow Pharm. v. Thompson, 478 U.S. 804, 808, 811-812 (1986)).  While "[t]he plaintiff is the 'master of the claim' and may prevent removal by choosing not to plead a federal claim even if one is available . . . . a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim."  Schmeling v. NORDAM, 97 F.3d 1336, 1339 (10th Cir.

1996) (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987) and Franchise Tax Bd. v.

Constr. Laborers Vacation Trust, 463 U.S. 1, 22 (1983)).  Federal courts may permit removal "when

the plaintiff's right to relief requires resolution of a substantial question of federal law."  Id.

**B.**     **USC Asserts Negligence and Breach of Statutory Duty Claims that are Governed by**

       **Federal Law**

USC asserts that this case should be remanded to state court because its Petition has

presented only state-law claims.  USC cites **Okla. Stat.** tit. 12A, § 4A-202 as the basis for its breach

of statutory duty claim[5] and does not cite any Oklahoma statute as the basis for its negligence claim.

Title 12A of the Oklahoma Statutes represents the enactment of the Uniform Commercial Code

("UCC") in Oklahoma, including Article 4A which governs funds transfers.  In contrast, AVB

alleges that the contested funds transfers completed over the Fedwire system are governed by

Regulation J, which is the Federal Reserve Board's enactment of Article 4A in the C.F.R.

Regulation J, 12 C.F.R. Pt. 210, Subpt. B, App'x B.[6]  Thus, this Court encounters two distinct

enactments of the UCC–one a state statute and one a federal regulation–containing identical

language purporting to govern the contested transactions in this case.  This Court's jurisdiction

depends on whether the federal regulation preempts the application of state law to the contested

transactions.[7]

---

   [5]*See supra* note 3.

   [6]"[T]he Federal Reserve Board revised Subpart B of Regulation J to apply the provisions of U.C.C. Article 4A to funds transfers handled by Federal Reserve banks."  Donmar Enters., Inc. v. S. Nat'l Bank of South Carolina, 64 F.3d 944, 948 (4th Cir. 1995).

   [7]"Federal regulations have no less preemptive effect than federal statutes," so long as it is clear the agency creating the regulation meant to preempt state law and the preemption is not "unreasonable, unauthorized, and inconsistent under the underlying statute."  Fidelity Fed. Sav. And Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153-54 (1982).  The Board of Governors of the Federal Reserve System has statutory authority to promulgate regulations.  12 U.S.C. § 248(I).

The language of Regulation J expresses an intent to preempt conflicting state laws, stating:

> [S]ubpart B of this part supercedes or preempts inconsistent provisions of state law. It does not affect state law governing funds transfers that does not conflict with the provisions of subpart B of this part, such as Article 4A, as enacted in any state, as it applies to parties to funds transfers through Fedwire whose rights are not governed by subpart B of this part.

Comm. on § 210.25, 12 C.F.R. Pt. 210, Subpt. B, App'x A.[8]  The Fourth Circuit interpreted this language to mean that "inconsistent provisions of state law are pre-empted, while state law that does not conflict is not pre-empted, . . . [the regulation lists] as an example of a non-conflicting state law[] a state law governing funds transfers that applies to parties to which the federal Article 4A *does not* apply."  Donmar Enters., Inc. v. S. Nat'l Bank of South Carolina, 64 F.3d 944, 948 (4th Cir. 1995) (emphasis added).  Dealing with this same issue, the Fourth Circuit further stated in *Eisenberg v. Wachovia Bank, N.A.*,

> Regulation J preempts any state law cause of action premised on conduct falling within the scope of Subpart B, whether the state law conflicts with or is duplicative of Subpart B.  Determining if a state law claim is preempted by Regulation J turns on whether the challenged conduct in the state claim would be covered under Subpart B as well.

301 F.3d 220, 223 (4th Cir. 2002) (citing Donmar Enters., 64 F.3d at 949-50) (internal citation omitted).  Therefore if Article 4A, as enacted in Regulation J, applies to AVB's challenged actions, then Regulation J preempts the duplicative Article 4A found in Oklahoma state law and this Court has federal question jurisdiction.  As discussed below, this Court finds that Regulation J applies to portions of the challenged actions in USC's negligence and breach of statutory duty claims, therefore

---

In this case there is no challenge to Regulation J being reasonable, authorized, or consistent with the underlying statute.

[8]"Subpart B" refers to the portion of Regulation J that regulates "Funds Transfers Through Fedwire."  Provisions of Subpart B refer to "Article 4A" of the UCC, the language of which is enacted as a regulation and attached to Subpart B as Appendix B.  *See* 12 C.F.R. § 210.25 *et seq*.

plaintiff has stated a federal question.

### 1.     USC's Negligence Claim is Governed by Federal Law

By its own terms, Regulation J "provides rules to govern funds transfers through Fedwire."

12 C.F.R. § 210.25(a).  Here, it is undisputed that the unauthorized payment orders and funds

transfers accomplished on June 18, 2009 were "accomplished using the Fedwire Funds Service."

Defendant's Response in Opposition to Plaintiff's Motion to Remand, Exhibit A (Affidavit of

Douglas Brinsfield at ¶ 5), Docket No. 15.[9]  At issue is whether AVB's allegedly negligent treatment

of these payment orders falls within the scope of Regulation J.

Article 4A, as enacted in Regulation J, defines "payment order" as "an instruction of a sender

to a receiving bank . . . to pay . . . a fixed or determinable amount of money to a beneficiary if: . .

. the instruction is transmitted by the sender directly to the receiving bank or to an agent, funds-

transfer system, or communication system for transmittal to the receiving bank."  12 C.F.R. Pt. 210,

Subpt. B, App'x B § 4A-103(a)(1), (a)(1)(iii).  Furthermore, "funds transfer" is broadly defined as

"the series of transactions, *beginning with the originator's payment order*, made for the purpose of

making payment to the beneficiary of the order."  *Id.* § 4A-104(a) (emphasis added).  Article 4A also

defines when banks are liable for repayment of unauthorized payment orders and provides the

standard for adjudicating whether a bank's security procedures are commercially reasonable.  *See*

*id.* § 4A-202 - 4A-205.

USC's negligence claims attack several aspects of AVB's conduct in handling the challenged

---

[9]In its state-court Petition, USC was silent as to the mechanism over which the
challenged funds transfers were made.  AVB provided this crucial information in its Response in
Opposition to Plaintiff's Motion to Remand, and this Court considers these facts because they
are a necessary element to the jurisdictional analysis in this case.  In reviewing an attack on
subject matter jurisdiction, "a court has 'wide discretion to allow affidavits, other documents,
and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" Stuart v. Colorado
Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir., 2001).

fund transfers.  Among other things, USC alleges AVB was negligent in "failing to implement security measures for electronic funds transfers that comply with industry standards or standards of commercial reasonableness," "failing to follow its own security procedures for electronic funds transfers," "failing to verify, authenticate and confirm purported payment orders for electronic transfers of funds from USC's accounts," "failing to implement industry standard practices" to assure the authenticity of payment orders.  *See* Notice of Removal, Exhibit A (Petition at ¶ 30(b)-(c), (e)-(h)), Docket No. 2.[10]

Despite USC's arguments to the contrary, the plain language of the Petition alleges specific actions that fall within the scope of Regulation J.  USC's general allegation that AVB was negligent by "failing to verify, authenticate, and confirm purported *payment order*s" due to inadequate security procedures falls within the scope of Regulation J for two reasons.  First, Article 4A, as enacted in Regulation J, expressly regulates funds transfers over Fedwire from their inception with the originator's initial payment instruction.  12 C.F.R. Pt. 210, Subpt. B, App'x B § 4A-104(a).  Thus, when USC alleges that AVB negligently handled the "payment orders" from unauthorized senders, such an allegation by definition falls within the scope of Regulation J.   Second, Article 4A, as enacted in Regulation J, specifically provides the factors this Court must consider when adjudicating whether the breached security procedures utilized by AVB were commercially reasonable (*see id.* § 4A-202(c)).  Therefore the federal Article 4A directly applies to the determination of USC's negligence claim that AVB's security procedures were not commercially reasonable.  Furthermore,

---

[10]Generally, other instances of alleged negligence include allegations that AVB failed to assess and respond to internet-related threats that AVB knew or should have known posed risks to its customer's accounts, failed to take steps to protect USC's accounts after USC notified AVB of the first set of unauthorized fund transfers, transferring funds from an account which had a zero balance, and failing to adequately investigate the unauthorized fund transfers after the breach had occurred.  *See* Notice of Removal, Exhibit A (Petition at ¶ 30), Docket No. 2.

USC repeatedly alleges that AVB failed to implement "industry standard" security practices, the use

of which is a factor which Article 4A requires this Court to evaluate when adjudicating commercial

reasonableness. *See id.*

Finally, USC's allegation that AVB "fail[ed] to follow its own security procedures" for fund

transfers is directly regulated by the federal Article 4A.   Article 4A states, "[I]f a bank and its

customer have agreed that the authenticity of payment orders issued to the bank in the name of the

customer as sender will be verified pursuant to a security procedure," a payment order received by

the bank through use of that security procedure may be effective against the customer, whether or

not the customer in fact authorized the statement.   *Id.* § 4A-202(b).   Therefore, under Article 4A,

AVB's liability for effectuating the unauthorized funds transfers may depend on whether it followed

the security procedure to which USC initially agreed.

It is apparent that even though USC never cited Article 4A, its negligence claim specifically

invokes Article 4A's language and methods.   USC has challenged actions which are part of a "funds

transfer" accomplished through use of the Fedwire fund-transfer system; therefore Regulation J

applies and preempts the duplicative Oklahoma state law.   USC's negligence claim states a federal

question.

### 2.     USC's Breach of Statutory Duty Claim is Governed by Federal Law

With regard to its breach of statutory duty claim, USC specifically cites Article 4A as the

basis for the statutory duty allegedly breached by the bank.[11]   While USC attempts to invoke Article

4A as enacted in the Oklahoma Statutes (**Okla. Stat.** tit. 12A § 4A-101 *et seq.*) the Oklahoma

statutes are preempted by federal Regulation J.   Incorporating the reasoning set forth in the

preceding sections, this Court finds that USC has challenged actions that fall within the scope of

---

[11]*See supra* note 3.

Regulation J, which preempts duplicative state law. *See* Eisenberg v. Wachovia Bank, 301 F.3d 220, 223 (4th Cir. 2002); 12 C.F.R. § 210.25. USC's breach of statutory duty claim states a federal question.

**C.    Supplemental Jurisdiction**

The parties agree that certain of USC's claims are governed only by state law and therefore may be remanded to state court. *See* Defendant's Response in Opposition to Plaintiff's Motion to Remand at 3, Docket No. 15. This Court declines to remand USC's claims governed by state law. 28 U.S.C. § 1367(a) provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

USC has challenged the execution of certain unauthorized payment orders originated on two separate days: June 18, 2009 and June 22, 2009. USC's claims of negligence, breach of statutory duty, and breach of contract are identical with regard to all the executed payment orders and draw no distinctions based on the day the transfer was accomplished. As discussed *supra*, this Court has original jurisdiction over the transfers completed via the Fedwire Funds Service. This Court finds that USC's remaining claims do not "raise[] novel or complex issue[s] of State law" or "substantially predominate[] over the . . . claims over which the district court has original jurisdiction." *Id.* § 1367(c)(1-2). All of USC's claims in this case arise from a single set of AVB activity and many are governed by identical statutory language. Declining to exercise supplemental jurisdiction in this case would lead to an unnecessary duplication of judicial resources. Therefore, this Court finds it is appropriate to exercise supplemental jurisdiction over USC's state law claims pursuant to 28 U.S.C. § 1367.

**D.    Plaintiff's Motion for Attorney's Fees**

In its Motion to Remand and Brief in Support, USC requests this Court award costs and attorney fees associated with the improper removal of this case.  As the basis for its request, USC cites 28 U.S.C. § 1447, which states in relevant part: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  Because this Court finds that this case was properly removed, an award of costs and attorney fees is inappropriate.  USC's request for costs and attorney's fees is therefore denied.

**CONCLUSION**

For the foregoing reasons, the Court finds Plaintiff Utility Supply Company's Motion to Remand is hereby **DENIED**.  Accordingly, Utility Supply Company's request for costs and attorneys fees is hereby **DENIED**.

**IT IS SO ORDERED** this 30th day of November, 2010.

James H. Payne
United States District Judge
Northern District of Oklahoma